UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

DEJAN NIKOLIC,

      Petitioner,

  -v-                                                No. 19-CV-6047-LTS

THOMAS DECKER et al.,

      Respondents.

-------------------------------------------------------x

## M<small>EMORANDUM</small> O<small>RDER</small>

      Petitioner Dejan Nikolic ("Nikolic" or "Petitioner"), who has been detained without a bond hearing by the United States Department of Homeland Security ("DHS" or "the Government") in connection with removal proceedings, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Nikolic has been detained since November 28, 2018, pursuant to the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(c), which mandates the detention of aliens who have committed certain crimes. Nikolic seeks (i) a declaration that the process used to commence and continue the removal proceedings against him violates the Fifth Amendment to the Constitution, the Rehabilitation Act ("RA"), 29 U.S.C. § 794, the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701 et seq., and the Suspension Clause, U.S. Const. art. I, § 9, cl. 2, (ii) immediate release or an order requiring a bond hearing during which the Government would be required to prove the necessity of his continued detention, and (iii) an injunction barring Respondents from transferring him outside of the New York City area. Nikolic also seeks costs and reasonable attorneys' fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.

The Court has jurisdiction of this petition pursuant to 28 U.S.C. §§ 1331 and 2241.

The Court has considered thoroughly the record, including Nikolic's petition and accompanying exhibits (Docket Entry No. 1, "Petition"), Respondents' memorandum in opposition to the Petition and accompanying papers (Docket Entry Nos. 11, 12, and 13), and Nikolic's reply memorandum and accompanying exhibits (Docket Entry No. 16).

For the following reasons, Nikolic's Petition is denied in its entirety.

## BACKGROUND

The pertinent, undisputed facts of this case, which are drawn from the Petition unless otherwise noted, are summarized as follows. Nikolic is a 41-year-old man from Serbia. (Petition ¶ 12.) He has lived in the United States for 26 years, and has been a lawful permanent resident since 2007. (Petition ¶¶ 27-28.) Nikolic is currently detained by Immigration and Customs Enforcement ("ICE") at the Orange County Correctional Facility pending removal, after having been convicted of two or more crimes involving moral turpitude and having violated at least one order of protection. (Petition ¶ 29.) Nikolic has been detained since November 28, 2018. (Id.)

On November 29, 2018, Nikolic was charged as removable from the United States pursuant to a Notice to Appear ("NTA") for violating Sections 237(a)(2)(A)(ii)[1] and (a)(2)(E)(ii)[2] of the INA. (Petition, Ex. 4.) The charges in the NTA stem from two petit larceny

---

[1] Section 237(a)(2)(A)(ii) provides that "[a]ny alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial, is deportable." 8 U.S.C.S. § 1227(a)(2)(A)(ii) (LexisNexis 2018).

[2] Section 237(a)(2)(A)(ii) provides that "[a]ny alien who at any time after admission is enjoined under a protection order issued by a court and whom the court determines has

convictions, three criminal contempt convictions, and three violations of protection orders that involved protection against credible threats of violence, repeated harassment, or bodily injury to the person or persons for whom the protection orders were issued. (Id.)

Nikolic made his first appearance at a "Master Calendar Hearing" on December 28, 2018. (Petition ¶ 30.) The immigration judge adjourned the hearing to February 8, 2019, in order to provide Nikolic an opportunity to obtain counsel. (Id.) On February 8, 2019, Nikolic appeared with pro bono counsel, who raised concerns regarding Nikolic's competency to proceed with his removal hearing, and requested a hearing pursuant to the Board of Immigration Appeals decision entitled Matter of M-A-M-, 25 I. & N. Dec. 474 (B.I.A. 2011). (Petition ¶ 31.) The immigration judge granted the unopposed request and scheduled the competency hearing for March 25, 2019.[3] (Petition ¶ 32.) On February 25, 2019, Nikolic's counsel requested an adjournment of the March 25, 2019, hearing. (Pujol Decl. ¶ 27.) The immigration judge granted the request and scheduled the competency hearing for April 5, 2019. (Id.)

In March and April of 2019, Nikolic underwent two rounds of psychological testing. On March 17, 2019, Dr. Howard Forman, M.D., evaluated Nikolic and concluded that "further psychological testing was necessary and recommended that Mr. Nikolic be evaluated by a neuropsychologist." (Petition ¶ 33.) On March 29, 2019, Nikolic's counsel requested an adjournment of the April 5, 2019, competency hearing in order to further test Nikolic. (Pujol

---

engaged in conduct that violates the portion of a protection order that involves protection against credible threats of violence, repeated harassment, or bodily injury to the person or persons for whom the protection order was issued is deportable." 8 U.S.C.S. § 1227(a)(2)(E)(ii) (LexisNexis 2018).

[3] The immigration judge initially scheduled the hearing for May 29, 2019, but later advanced it to March 25, 2019. (Declaration of Deportation Officer Joseph T. Pujol ("Pujol Decl."), Docket Entry No. 12, ¶¶ 24, 26.)

Decl. ¶ 28.)  The immigration judge granted the request and scheduled the hearing for May 3, 2019.  (Pujol Decl. ¶ 28.)

On April 22, 2019, Dr. Claudia Diez, Ph.D., administered two psychological tests to measure Nikolic's cognitive functioning.  (Petition ¶¶ 36-38.)  She concluded that Nikolic has "pronounced impediments in immediate and delayed memory and attention."  (Petition ¶ 38.)  Dr. Forman presented his and Dr. Diez's findings in an April 28, 2019, report, which concluded that "the most likely explanation of Mr. Nikolic's presentation is Korsakoff syndrome," which "results from permanent brain damage secondary to thiamine deficiency" caused by prolonged alcohol abuse.  (Petition ¶ 33, Ex. 1.)  The main symptom of Korsakoff syndrome is "confabulation," which "occurs when an individual is asked a question and does not realize that because of retrograde amnesia (forgetting past events) that they don't know the correct answer."  (Petition ¶ 34.)

Citing Dr. Forman's and Dr. Diez's respective evaluations, Nikolic's counsel moved to terminate the removal proceedings based on Nikolic's incompetency.  (Petition ¶ 44.)  On May 3, 2019, the immigration judge conducted a competency hearing.  After taking testimony from Nikolic and his examining physicians, the judge concluded that Nikolic was incompetent, but declined to terminate the removal proceedings.  (Petition ¶ 45.)  Instead, the judge ordered certain safeguards for the removal hearing, including the use of leading questions on direct examination, requiring short concise questions, allowing breaks during Nikolic's testimony, allowing assistance from family members, and evaluating Nikolic's testimony in the context of his mental illness.  (Petition ¶ 45; Pujol Decl. ¶ 29.)

Following his competency hearing, Nikolic's counsel filed two applications for relief from removal.  (Petition ¶ 46.)  On July 11, 2019, the immigration judge held Nikolic's

final removal hearing. (Declaration of Molly Lauterback, Esq. Under Penalty of Perjury Under 28 USCA § 1746 ("Lauterback Decl."), Docket Entry No. 16-2, ¶ 18.) On September 3, 2019, the immigration judge issued a Decision and Order denying Nikolic's applications for relief from removal and ordering him removed to Serbia pursuant to the charges in his NTA. (Lauterback Decl. ¶ 23.) Eight days later, Nikolic appealed the immigration judge's decision to the BIA. (Id.)

## Discussion

Section 2241 of Title 28 of the United States Code "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" Wang v. Ashcroft, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).

Challenges to Removal Proceedings (First, Second, Third, Fourth, and Eighth Causes of Action)

Nikolic challenges "the process employed by the Respondents to remove [him] . . . from the United States" as violative of the Fifth Amendment, the RA, the APA, and the Suspension Clause. (Petition ¶ 9.) Respondents contend that the INA, as amended by the REAL ID Act, precludes judicial review of these claims. (Respondents' Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus ("Resp. Opp."), Docket Entry No. 13, at 8-12.)

The INA, as amended, provides that "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal." 8 U.S.C.S. § 1252(a)(5) (LexisNexis 2018). "Section 1252(a)(5)'s prohibition applies broadly, not only to situations where the favorable resolution of a plaintiff's claim would per se prevent the plaintiff's removal but also where the claim is a necessary

prerequisite to the plaintiff's ultimate goal of adjustment of status." Singh v. U.S.C.I.S., 878 F.3d 441, 445–46 (2d Cir. 2017) (internal quotation marks and citations omitted).  The Act further provides that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section."  8 U.S.C.S. § 1252(b)(9) (LexisNexis 2018).  "'[T]aken together, § 1252(a)(5) and § 1252(b)(9) mean that any issue — whether legal or factual — arising from any removal-related activity can be reviewed only through' a petition for review filed with an appropriate court of appeals."  Asylum Seeker Advocacy Project v. Barr, No. 19-CV-6443 (JMF), 2019 WL 4221479, at *2 (S.D.N.Y. Sept. 5, 2019) (quoting J.E.F.M. v. Lynch, 837 F.3d 1026, 1031 (9th Cir. 2016)).

The Court thus lacks jurisdiction to hear Petitioner's due process, RA, APA, and Suspension Clause challenges, as they "aris[e] from [a] . . . proceeding brought to remove an alien from the United States."  8 U.S.C.S. § 1252(b)(9) (LexisNexis 2018).  Petitioner explicitly challenges "the process employed by Respondent to remove him . . . from the United States[,]" specifically, Respondents' alleged failure to accommodate Petitioner's disability.  (Petition ¶¶ 9, 110–125.)  Petitioner also asserts that "[t]he only accommodation that can be made to Mr. Nikolic is termination of the removal proceedings."  (Petition ¶ 121.)

Respondents' alleged failure to accommodate Petitioner's disability cannot be remedied without first invalidating the final order of removal that has been entered against him.  Thus, the relief that Petitioner seeks "is a 'necessary prerequisite' to any administrative challenge to [his] removal order[]."  Asylum Seeker Advocacy Project, 2019 WL 4221479, at *2 (quoting Delgado v. Quarantillo, 643 F.3d 52, 55 (2d Cir. 2011)).  Further, were the Court to "terminat[e]

. . . the removal proceedings," as Petitioner requests, the Court "would per se prevent the plaintiff's removal," in direct contravention of the INA. Singh, 878 F.3d at 445. For these reasons, Petitioner's First, Second, Third, Fourth, and Eighth Causes of Action are dismissed for lack of jurisdiction.[4]

Challenge to Petitioner's Continued Detention (Fifth and Sixth Causes of Action)

Section 1226(c) of Title 8 of the United States Code, the statute pursuant to which Petitioner is detained, commands the Attorney General to "take into custody any alien who falls into one of several enumerated categories involving criminal offenses and terrorist activities." Jennings v. Rodriguez, 138 S. Ct. 830, 837 (2018) (internal quotation marks omitted). Section 1226(c) applies to aliens present in the country who may be removed if they are classified as "deportable alien[s]" under 8 U.S.C. Section 1227(a). Id. For example, an alien is classified as "deportable" if he has been convicted of multiple crimes involving moral turpitude after being admitted into the United States. 8 U.S.C.S. § 1227(a) (LexisNexis 2018). The statute requires that such detention continue through the removal proceedings. Jennings, 138 S. Ct. at 842. In the Fifth and Sixth Causes of Action of his Petition, Nikolic claims that his continued detention without an individualized bond hearing violates the Due Process Clause of the federal Constitution.

Because nothing in the statutory text of 8 U.S.C. § 1226(c) imposes any limit on the length of detention, or explicitly addresses bond hearings, Jennings, 138 S. Ct. at 846, the

---

[4] Petitioner's perfunctory arguments concerning the Suspension Clause are unavailing. Section 1252 of the INA clearly provides Petitioner with an opportunity for judicial review of his challenge to the legal sufficiency of "[t]he process employed to remove [him] from the United States" (Petition ¶ 147). See Rosario v. Holder, 627 F.3d 58, 61 (2d Cir. 2010) ("The REAL ID Act of 2005 amended the [INA] to obviate . . . Suspension Clause concerns" by permitting judicial review of "nondiscretionary" BIA determinations and "all constitutional claims or questions of law").

Court must address Nikolic's constitutional argument. Neither the Supreme Court nor the Second Circuit has resolved the broad question of whether an alien detained pursuant to 8 U.S.C. Section 1226(c) is entitled to a bond hearing when his or her detention becomes unreasonable in violation of the Due Process Clause of the Fifth Amendment.

Thoughtful and persuasive lower court decisions in this District have addressed the question of what due process protections should be afforded to aliens subject to mandatory detention under 8 U.S.C. Section 1226(c), and have concluded that those aliens are entitled to individualized determinations as to their risk of flight and dangerousness when their continued detention becomes unreasonable and unjustified. See Sajous v. Decker, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *8-11 (S.D.N.Y. May 23, 2018) (citing Demore v. Kim, 538 U.S. 510, 532 (2003) (Kennedy, J., concurring)); see also Hernandez v. Decker, 18-CV-5026 (ALC), 2018 WL 3579108, at *5-10 (S.D.N.Y. July 25, 2018); Vallejo v. Decker, No. 18-CV-5649 (JMF), 2018 WL 3738947, at *3-6 (S.D.N.Y. Aug. 7, 2018).

The Court finds that Nikolic has failed to carry his burden of demonstrating that his continued detention has become "unreasonable and unjustified," such that it violates due process. "[W]hether mandatory detention under § 1226(c) has become unreasonable and thus a due process violation, must be decided using an as-applied, fact-based analysis." Sajous, 2018 WL 2357266, at *10 (citation omitted). Courts in this District have conducted such fact-based analysis by considering factors derived from (i) the Supreme Court's decisions in Zadvydas v. Davis, 533 U.S. 678 (2001) (which suggested that detention for more than six months may be unconstitutional), and Demore (placing particular emphasis on Justice Kennedy's concurrence), (ii) factors applied in cases from other Circuits that involved similar due process concerns, and

(iii) pre-Lora[5] decisions in this District. Sajous, 2018 WL 2357266, at *10-11; see also Hernandez, 2018 WL 3579108, at *6-7. From these sources, courts in this District have derived five factors for consideration in determining whether an alien's detention is "unreasonable or unjustified" in violation of the Due Process Clause: "(1) the length of time the alien has been detained; (2) whether the alien is responsible for the delay; (3) whether the alien has asserted defenses to removal; (4) whether the alien's civil immigration detention exceeds the time the alien spent in prison for the crime that rendered him removable; and (5) whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention." Hernandez, 2018 WL 3579108, at *7 (citing Sajous, 2018 WL 2357266, at *10-11).

Having reviewed the facts pertaining to Nikolic's detention in light of these factors, the Court concludes that Nikolic has not demonstrated that his detention has been unreasonably prolonged such that he is entitled to an individualized determination as to his risk of flight and dangerousness to the community. First, Nikolic has been detained since November 28, 2018—over eleven months. However, while the Supreme Court has noted that "Congress previously doubted the constitutionality of detention for more than six months," Zadvydas, 533 U.S. at 701, the Court has expressly declined to read a six-month time limit into the statute, Jennings, 138 S. Ct. at 846. Moreover, in assessing this factor, the Court should consider "the likely duration of continued detention," not just the duration of past detention. Cf. Sajous, 2018 WL 2357266, at *10. Nikolic's detention is unlikely to continue much longer. Nikolic's

---

[5] In Lora, the Second Circuit held that, in order to avoid the constitutional concerns raised by the prospect of indefinite detention, an immigrant detained pursuant to a statute requiring mandatory detention pending removal proceedings must be afforded a bail hearing before an immigration judge within six months of his or her detention. Lora v. Shanahan, 804 F.3d 601 (2d Cir. 2015). This decision was vacated in light of the Supreme Court's decision in Jennings. See Shanahan v. Lora, 138 S. Ct. 1260 (2018).

removal proceedings have concluded, and the immigration judge has ordered him removed to Serbia.  All that remains to be resolved is Nikolic's appeal to the BIA and, if he so chooses, to the appropriate court of appeals.

Second, Nikolic is primarily responsible for the delay in his proceedings. Petitioner has not identified any delay caused by Respondents.  To the extent Nikolic's removal proceedings were delayed, each delay can be attributed to Nikolic.  Nikolic's initial Master Calendar Hearing was adjourned to give him time to retain counsel.  The proceedings were then delayed to hold a competency hearing.  The immigration judge initially scheduled the competency hearing for the end of May, but then expedited the hearing to the end of March.  The competency hearing was twice adjourned thereafter at Nikolic's request.  After the immigration judge held Nikolic's final removal hearing, Nikolic's case proceeded quickly—fewer than two months passed between the final hearing date and date of immigration judge's Decision and Order.

Third, while Nikolic has asserted defenses to removal, they were all rejected by the immigration judge.  Therefore, Petitioner will "presumably be removed from the United States eventually" and, as a result, his detention "at least marginally serve[s] 'the ultimate purpose behind the detention,'" and Nikolic's continued detention is "more reasonable than if the alien had at least some possibility of remaining in the country."  Sajous, 2018 WL 2357266, at *11.

Fourth, Nikolic's civil immigration detention is consistent with the time he spent in prison for the crimes that render him removable.  Nikolic spent more than eleven months in custody for the crimes listed in the NTA, and has been detained more than eleven months in

connection with his ongoing removal proceedings. (Petition, Ex. 4; Return to Habeas Petition, Docket Entry No. 11, Ex. A at 13-14, 16.)

Fifth, the facility where Nikolic is detained is not "meaningfully different from a penal institution for criminal detention," Sajous, 2018 WL 2357266, at *11, as he is detained at the Orange County Correctional Facility. However, this factor does not, under the circumstances of this case, outweigh the others or provide a standalone basis for a finding of a due process violation.

Considering the factors outlined above, the Court concludes that Petitioner has not carried his burden of demonstrating that his detention is "unreasonable and unjustified" such that it violates due process. Therefore, Petitioner's Fifth and Sixth Causes of Action are dismissed.

Eighth Amendment Challenge (Seventh Cause of Action)

Petitioner asserts that "[t]he government's categorical denial of bail to certain noncitizens violates the right to bail encompassed by the Eighth Amendment." (Petition ¶ 144.) Because "[d]eportation is not a criminal proceeding and has never been held to be punishment," the Eighth Amendment does not require bail in removal proceedings. Carlson v. Landon, 342 U.S. 524, 537, 546 (1952). Therefore, Petitioner has failed to demonstrate that he has an Eighth Amendment right to bail, and his Seventh Cause of Action is dismissed.

Request for Injunction

Petitioner also seeks an order enjoining Respondents from transferring him outside the New York City area, but offers no basis for the Court to issue such an injunction, particularly in light of the denial of his Petition. Therefore, Petitioner's request for injunctive relief is denied.

Costs and Attorneys' Fees

Petitioner requests an award of his costs and reasonable attorneys' fees incurred pursuant to the EAJA, 28 U.S.C. Section 2412. Under Section 2412, the prevailing party in a civil action against the United States is entitled to attorneys' fees and other expenses unless the position of the United States "was substantially justified." 28 U.S.C.S. § 2412(a)(1), (d)(1)(A) (LexisNexis 2013). A "prevailing party" is "'[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded.'" Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res., 532 U.S. 598, 603 (2001) (quoting Black's Law Dictionary). Because the Court has dismissed all of Petitioner's claims, Petitioner is not the prevailing party in this action. Therefore, Petitioner's request for costs and attorneys' fees is denied.

CONCLUSION

For the foregoing reasons, the Petition is denied in its entirety. The Clerk of Court is respectfully requested to enter judgment in Respondents' favor, and close this case. Docket Entry No. 1 is resolved.

    SO ORDERED.

Dated: New York, New York
       November 12, 2019

      /s/ Laura Taylor Swain
      LAURA TAYLOR SWAIN
      United States District Judge